KRATCHMAN v CITY OF DETROIT

Docket No. 59564. Argued May 3, 1977 (Calendar No. 6).—Decided
      May 19, 1977.

George Kratchman, a taxpayer in the City of Detroit, brought an
      action seeking to enjoin the City of Detroit from issuing general
      obligation bonds for the Civic Center-Riverfront Stadium Devel-
      opment. Plaintiff alleges that the notice of the proposed bond-
      ing published in the *Detroit Free Press* was inadequate in
      apprising the taxpayers of their rights and obligations under
      the law. The Wayne Circuit Court, Peter B. Spivak, J., granted
      summary judgment for plaintiff and issued an injunction. De-
      fendant appeals prior to decision by the Court of Appeals. *Held:*

      1. The defendant satisfied the statutory requirements with
      the published notice of intent to issue general public improve-
      ment bonds. The notice stated the maximum amount of the
      bond issue, the various purposes of the bond issue, its source of
      payment, and other information in relation to the nature of the
      issue, including the maximum interest rate and period of
      maturation.

      2. The home rule cities act merely requires that the notice of
      intent to issue bonds state the "purpose thereof" rather than
      describe the proposed project with great specificity. The notice
      in the *instant* case stated that the purpose of the bonds was
      "Civic Center—Riverfront Stadium Development" which meets
      all the requirements of the statute.

      3. The proposed public improvement bond had many pur-
      poses and the notice specified the improvements and the
      amount to be allocated for each one. Requiring further particu-
      larization in the case of this multi-purpose general public
      improvement bond issue raises the danger that publication of a

REFERENCES FOR POINTS IN HEADNOTES

[1] 64 Am Jur 2d, Public Securities and Obligations §§ 75, 131.
      Validity of governmental borrowing or expenditure for purposes of
      acquiring, maintaining, or improving stadium for use of profes-
      sional athletic team. 67 ALR3d 1186.
[2–4, 7, 8] 64 Am Jur 2d, Public Securities and Obligations §§ 141–150.
[5] 64 Am Jur 2d, Public Securities and Obligations § 151.
[6] 64 Am Jur 2d, Public Securities and Obligations § 180.

prospectus, rather than reasonable notice, would be required. Some flexibility must be left to the issuing authority as to the disposition of the bond proceeds.

4. The trial court erred in finding that notice required some indication of the total contemplated project cost. The total stadium project was not to be financed by a single bond issue. There is nothing in the record to indicate that the defendant would not have had the option of financing actual construction through other sources. It was sufficient for the defendant to state the maximum cost of the bond issue in question, rather than to make uncertain estimates of the ultimate cost of the project.

5. Holding that the notice of intent to issue bonds was misleading because it referred to a stadium rather than an arena was clearly erroneous. Facilities designed to house indoor sporting events are commonly referred to as stadiums. Furthermore, had the defendant referred to the development of a civic center arena there could well have been confusion with the civic center facility known as Cobo "Arena".

6. The home rule cities act requires that the legislative body of a city, rather than the Municipal Finance Commission, determine the contents of the notice of intent. Until the notice of intent is published and the referendum period has run, the commission cannot make the determination mandated by the Municipal Finance Act.

The judgment of the trial court is reversed and the cause remanded with direction to grant summary judgment for the defendant.

Justices Williams and Blair Moody, Jr., dissented on the ground that the notice did not inform the electors and all other interested persons of the "purpose" of the bond issue as required by the statute, and consequently was inadequate. Additional information which was given to the Common Council by the Mayor of Detroit shows that the "purpose" of the bond issue was to cover architectural and engineering fees likely, coupled with initial site preparation expenses relating to the construction of a new 20,000-seat arena or stadium near Cobo Hall at a cost originally estimated to be $20,000,000. This additional information was also appropriate for the citizens of Detroit so they could adequately understand the "purpose" of the bond issuance, and would have been included in the notice without much increase in length. "Civic Center—Riverfront Stadium Development $1,500,000" is at best ambiguous. A bond issue which finances only a part of a project must be placed in

context with the whole project in order to understand the "purpose" of the issue.

OPINION OF THE COURT

1. MUNICIPAL CORPORATIONS—BONDS—NOTICE—HOME RULE CITIES ACT—STADIUM DEVELOPMENT.

The City of Detroit satisfied the requirements of the home rule cities act with a published notice of intent to issue general public improvement bonds for projects which included development of a riverfront stadium where the notice stated the maximum amount of the bond issue, the various purposes of the bond issue, its source of payment, the right of the taxpayers to a referendum, and other information in relation to the nature of the issue, including the maximum interest rate and period of maturation (MCL 117.5[g]; MSA 5.2084[g]).

2. MUNICIPAL CORPORATIONS—BONDS—NOTICE—HOME RULE CITIES ACT—STADIUM DEVELOPMENT.

The home rule cities act merely requires that a notice of intent to issue bonds state the "purpose thereof" rather than describe the proposed project with great specificity; a notice which stated that a purpose of a proposed public improvement bond issue by the City of Detroit was "Civic Center—Riverfront Stadium Development" meets all the requirements of the statute (MCL 117.5[g]; MSA 5.2084[g]).

3. MUNICIPAL CORPORATIONS—BONDS—NOTICE—HOME RULE CITIES ACT—PUBLIC IMPROVEMENTS—MULTIPLE PURPOSES.

Notice by a city of a proposed public improvement bond issue which had many purposes was reasonable where the notice specified the proposed improvements and the amount to be allocated for each one (MCL 117.5[g]; MSA 5.2084[g]).

4. MUNICIPAL CORPORATIONS—BONDS—NOTICE—HOME RULE CITIES ACT—STADIUM DEVELOPMENT.

Notice of a proposed issue of bonds to secure funds for, among other things, architectural plans and specifications for a stadium which was not to be financed by the single bond issue was sufficient in stating the maximum cost of the bond issue in question, rather than making uncertain estimates of the ultimate cost of the project (MCL 117.5[g]; MSA 5.2084[g]).

5. WORDS AND PHRASES—STADIUMS—ARENAS—MUNICIPAL CORPORATIONS—BONDS—NOTICE.

Facilities designed to house indoor sporting events are commonly referred to as stadiums; therefore a holding that a notice of

intent to issue general improvement bonds was misleading because it referred to a facility to be built as a stadium rather than as an arena was clearly erroneous (MCL 117.5[g]; MSA 5.2084[g]).

6. MUNICIPAL CORPORATIONS—BONDS—NOTICE—MUNICIPAL FINANCE COMMISSION.

The home rule cities act requires that the legislative body of a city, rather than the Municipal Finance Commission, determine the contents of a notice of intent to issue bonds; until the notice of intent is published and the referendum period has run, the Municipal Finance Commission cannot make the determination mandated by the Municipal Finance Act (MCL 117.5[g], 135.7; MSA 5.2084[g], 5.3188[27]).

DISSENTING OPINION

WILLIAMS and BLAIR MOODY, JR., JJ.

7. MUNICIPAL CORPORATIONS—BONDS—NOTICE—HOME RULE CITIES ACT—STADIUM DEVELOPMENT.

*A notice of the City of Detroit's intent to issue public improvement bonds for "Civic Center—Riverfront Stadium Development $1,500,000" did not inform the electors and all other interested persons of the "purpose", as required by the home rule cities act, and consequently the notice was inadequate, where a prior communication of the Mayor of Detroit to the Common Council shows that the purpose of the bond issue was to cover architectural and engineering fees likely, coupled with initial site preparation expenses for construction of a new 20,000-seat arena or stadium near Cobo Hall at a cost originally estimated to be $20,000,000 (MCL 117.5[g]; MSA 5.2084[g]).*

8. MUNICIPAL CORPORATIONS—BONDS—NOTICE—HOME RULE CITIES ACT.

*A notice of intent to issue bonds to partially finance a public project must generally describe the nature of the final project then planned in order for citizens to have adequate knowledge of the purpose of the limited bond issue and make a fair judgment as to the exercise of their right of referendum (MCL 117.5[g]; MSA 5.2084[g]).*

*Ronald J. Prebenda* for plaintiff.

*Richard E. Craig,* Corporation Counsel, and

*Richard L. Manetta, Victor G. Marrocco,* and *William B. Beach,* Assistants Corporation Counsel, and *Stratton S. Brown* and *David B. Lewis,* Special Assistants Corporation Counsel, for defendant.

FITZGERALD, J. The narrow issue before this Court is whether the City of Detroit's published notice of intent to issue bonds for stadium development meets the requirements set by statute. This case does not concern the merits of such stadium development.

Defendant City of Detroit appeals directly, pursuant to our grant of by-pass, from the trial court's summary judgment enjoining the defendant from issuing general obligation bonds for "Civic Center —Riverfront Stadium Development". At issue is the trial court's holding that the November 3, 1976 published notice of intent to issue such bonds was deficient in light of *Alan v Wayne County,* 388 Mich 210; 200 NW2d 628 (1972). We are of the opinion that the trial court erred in granting such relief and therefore it is reversed. The notice of intent as published met all applicable statutory and case-law requirements.

The contested bond issue seeks to finance in part a proposed 20,000-seat sports facility to be located on the Detroit River near Cobo Hall in downtown Detroit. The total cost of the project has been variously estimated at 20–25 million dollars. Five million dollars of the total cost was to be obtained from a Federal grant under the Public Works Employment Act of 1976, Pub L 94-369, 42 USC 6701 *et seq.* Another $5,865,000 was to be paid directly by the City of Detroit. This money was transferred from the Civic Center Plaza appropriation to an appropriation for a new riverfront arena by a resolution passed by the Detroit City Council on October 27, 1976.

On October 27, 1976, the Detroit City Council also passed a resolution authorizing the issuance and sale of $7,795,000 in General Public Improvement Bonds, Series 77-A, which was subsequently approved by the Mayor on November 1, 1976. Of this $7,795,000, $1,500,000 was designated for "Civic Center—Riverfront Stadium Development" for the purpose of securing funds for architectural plans and specifications.

On November 3, 1976, the City of Detroit, pursuant to MCLA 117.5(g); MSA 5.2084(g), published notice of intent to issue bonds in a one-quarter page advertisement in the *Detroit Free Press,* at page 11C, "Business Finance Section". See Appendix. The notice stated that these bonds were subject to a referendum petition during a 45-day period between the notice date of November 3, 1976 and December 18, 1976.

After the 45-day period for a referendum petition had passed, the City of Detroit applied to the Municipal Finance Commission for approval of the issue of the bonds. On February 15, 1977, the Municipal Finance Commission issued an order of approval allowing the City of Detroit to issue the total bond package, including the $1,500,000 for Civic Center—Riverfront Stadium Development. The bonds were to have been sold on March 30, 1977, but plaintiff filed a suit on March 14, 1977, in Wayne Circuit Court seeking an injunction.

After this Court denied the Governor's request, sent pursuant to GCR 1963, 797, for an early determination as to whether the notice published was sufficient, the trial court, on March 28, 1977, granted the requested injunction and denied defense motions for accelerated and summary judgment. On April 1, 1977, this Court granted defendant's motion for immediate consideration and ap-

plication for leave to appeal prior to decision of
the Court of Appeals.

I

Defendant contends, and we agree, that this is
not an *Alan* case. The published notice at issue in
*Alan* was found misleading in that it did not
indicate: (1) that the full faith and credit of the
county was behind the bonds; (2) any interest rate
or period of time over which the bonds would
mature; (3) that the taxpayers had a right of
referendum in relation to the proposed bond issue.
Here, the notice of intent cannot compare with the
patently defective notice of *Alan.* This defendant's
quarter-page notice unmistakably stated that the
bonds would be secured by the city's unlimited
taxing power, that they would mature over a
period not to exceed 16 years, and that they would
bear interest at a rate not to exceed ten percent.
The notice gave specific detail regarding the tax-
payer's right of referendum and indicated that
additional information would be made available by
the city clerk or finance director upon request.

At issue in this case is whether defendant has
met the requirements provided by statute in pub-
lishing its notice of intent to issue bonds. It should
be noted that in *Alan* this Court was concerned
with the applicability of a different statute,
namely, the Revenue Bond Act, MCLA 141.101 *et
seq.;* MSA 5.2731 *et seq.* The statute at issue in the
instant case is the home rule cities act, MCLA
117.1 *et seq.;* MSA 5.2071 *et seq.* The pertinent
section of the home rule cities act, MCLA 117.5(g);
MSA 5.2084(g), requires, *inter alia,* that "[t]he
notice of intent to issue bonds shall state the
maximum amount of the bond issue, purpose
thereof, source of payment, right of referendum

thereon, and such other information as the legislative body shall determine to be necessary to adequately inform the electors and all other interested persons of the nature of the issue and their rights with respect thereto". We are persuaded that defendant satisfied the statutory requirements with the notice of intent published on November 3, 1976. Defendant's notice of intent to issue bonds stated the maximum amount of the bond issue, the various purposes of the bond issue, its source of payment, the right of the taxpayers to a referendum, and other information in relation to the nature of the issue, including the maximum interest rate and period of maturation.

Plaintiff contends that defendant's notice of intent to issue bonds is defective because it did not adequately inform the taxpayers of the City of Detroit of the nature of the project which is the subject matter of the notice. However, the applicable statute merely requires that the notice of intent to issue bonds state the "purpose thereof" rather than describe the proposed project with great specificity. Defendant's notice of intent did in general terms state just what the purpose of the bonds in question was, namely, "Civic Center— Riverfront Stadium Development". It is our opinion that defendant's notice of intent in the instant case met all the requirements of the statute, including an adequate statement of the "purpose thereof * * * and such other information as * * * to adequately inform the electors and all other interested persons of the nature of the issue and of their rights with respect thereto".

Another factor to be weighed in assessing the specificity with which the purpose of the bond issue was stated is that here the proposed public improvement bond issue had many purposes. The

defendant's notice did specify that of the proposed total proceeds, $325,000 was allocated for improvements to the Art Institute, $350,000 for historical purposes, $3,225,000 for recreational-capital improvement purposes, $1,395,000 for environmental protection and maintenance, $1,000,000 for Washington Boulevard-Woodward Avenue community and economic development, and $1,500,000 towards development of a civic center—riverfront stadium. Requiring further particularization in the case of this multi-purpose general public improvement bond issue raises the danger that newspaper publication of a prospectus, rather than reasonable notice, would be required. Some flexibility must be left to the issuing authority as to the disposition of the bond proceeds. Too much detail in the notice of intent could deny to the issuing authority the requisite flexibility, would not appreciably aid taxpayers in determining whether to petition for a referendum on the financing of a given endeavor through bonding, and thus could well be self-defeating.

## II

We believe that the trial court erred in finding that *Alan* required in this case notice of some indication of the total contemplated project cost. This Court in *Alan* did quite correctly find a stated debt of $126,000,000 to be misleading, when the notice spoke in terms of "acquiring, constructing, furnishing and equipping a new stadium," and the notice said nothing concerning the interest rate nor of the period over which the bonds would mature. These factors would have pushed the potential cost to as high as $371,000,000. Since *Alan* was a case of financing the total project by one bond issue, the failure in *Alan* to specify the total

project cost amounted to a failure to disclose sufficient facts regarding the nature of the bond issue. However, in the instant case the notice stated the maximum interest rate of the bonds and their maximum period of maturation, and thus provided concerned taxpayers with sufficient information to determine the maximum cost of the bonds.

We are not presented with a situation in which the total project was to be financed by a single bond issue. The City of Detroit may have financed the balance of the project by some means not involving the issuance of bonds. Indeed, there is nothing before us to indicate that defendant would not have had the option of financing actual construction through Federal grants, general fund appropriations or by a combination of both had it decided to go through with the project once the architectural plans and specifications were completed. To be sure, if the city did decide to finance actual construction in whole or in part through additional bonds, notice would again be required.

Accordingly, we hold that it was sufficient for defendant to state the maximum cost of the bond issue in question, rather than make uncertain estimates of the ultimate cost of the project as plaintiff urges.

### III

We are of the opinion that the trial court's holding that the notice of intent was misleading because it referred to a stadium rather than an arena was clearly erroneous. Dictionary and encyclopedia definitions aside, facilities designed to house indoor sporting events are commonly referred to as stadiums. The Olympia Stadium is presently the home of the National Hockey League's Detroit Red Wings, while the NHL Chicago Black-

hawks and the National Basketball Association's Chicago Bulls play their home games in the facility known as Chicago Stadium. Furthermore, had defendant referred to the development of a civic center arena, there could well have been confusion as to whether bond proceeds would be used towards further development of the already existing 11,000-seat civic center facility known as Cobo "Arena".

## IV

The trial court held the notice of intent to be defective because it had not been approved by the Municipal Finance Commission prior to publication. Although there is language in *Alan, supra,* 388 Mich 210, 353, to the effect that "proper notice cannot reasonably be accomplished until after the terms of the issue have been approved by the Municipal Finance Commission", this observation relative to *Alan* should not control the results of this case. MCLA 117.5(g), *supra,* requires that the legislative body, rather than the commission, determine the contents of the notice of intent. Furthermore, before the commission approves the issue, it must "determine that the proposed bonds comply with the provisions of this [municipal finance] act and other provisions of law". MCLA 135.7; MSA 5.3188(27). Until the notice of intent is published and the referendum period has run, the commission cannot make the determination mandated by the law.

For the foregoing reasons, the judgment of the trial court is reversed, and the cause is remanded with direction to grant the defendant City of Detroit's motion for summary judgment. No costs, this being a public question.

KAVANAGH, C. J., and COLEMAN and RYAN, JJ., concurred with FITZGERALD, J.

LEVIN, J., took no part in the decision of this case.

## APPENDIX

# NOTICE TO THE TAXPAYERS AND ELECTORS OF THE CITY OF DETROIT OF INTENT TO ISSUE GENERAL OBLIGATION BONDS SECURED BY THE CITY'S UNLIMITED TAXING POWER AND RIGHT OF REFERENDUM RELATING THERETO

TAKE NOTICE that the City of Detroit intends to issue General Obligation Bonds of the City for the purpose of paying all or part of the cost of the following described public improvements, said bonds to be in principal amounts not to exceed those amounts preceding the following named series of Bonds:

### 1. $7,795,000 General Public Improvement Bonds, Series 77-A

| | |
|---|---:|
| Art Institute—Capital Improvements | $ 325,000 |
| Civic Center—Riverfront Stadium Development | 1,500,000 |
| Community & Economic Development—Washington Boulevard— Woodward Avenue Development | 1,000,000 |
| Environmental Protection and Maintenance—Capital Improvements | 1,395,000 |
| Historical—Capital Improvements | 350,000 |
| Recreation—Capital Improvements | 3,225,000 |
| | $7,795,000 |

### 2. $6,530,000 Public Utility Lighting Bonds, Series 77-B

| | |
|---|---:|
| Public Lighting—Capital Improvements | $6,530,000 |

Said Bonds will mature in not to exceed sixteen (16) annual installments with interest at a rate or rates to be finally determined upon public sale of the Bonds, but not to exceed ten percent (10%) per annum or such higher rate of interest as may be permitted by law on the unpaid principal balance from time to time remaining outstanding on said Bonds.

### SOURCE OF PAYMENT OF BONDS

Said Bonds will be issued in accordance with the Charter of the City of Detroit, and Act 279, Public Acts of Michigan, 1909, as amended, and will be General Obligation Bonds of the City pledging the full faith and credit of the City and will be payable as to both principal and interest from ad valorem taxes which the City will be required to levy on all taxable property in the City without limitation as to rate or amount.

### RIGHT OF REFERENDUM

The City of Detroit will issue (1) General Public Improvement Bonds, Series 77-A, in principal amount not to exceed Seven Million Seven Hundred Ninety-Five Thousand ($7,795,000) Dollars, and (2) Public Utility Lighting Bonds, Series 77-B, in principal amount not to exceed Six Million Five Hundred Thirty Thousand ($6,530,000) Dollars without vote of the electors unless a petition requesting an election on the issuance of said Bonds signed by not less than ten percent (10%) or fifteen thousand (15,000), whichever is the lesser, of the registered electors of the City of Detroit, is filed with the City Clerk of the City of Detroit for presentation to the City Council of the City of Detroit within forty-five (45) days from the date of publication hereof.

Petitions for referendum may be filed for the General Public Improvement Bonds, Series 77-A as a whole or for any of the public improvements to be financed therefrom as above listed and petitions for referendum may be filed for the Public Utility Lighting Bonds, Series 77-B. A single petition may also be filed for both of the above bond issues. If such petitions are filed, the bond issue or the part of the bond issue against which the petitions are filed may not be issued and sold unless approved by a majority vote of the electors voting on the question of their issuance.

THIS NOTICE is given for the benefit of the taxpayers and electors of the City of Detroit pursuant to the requirements of Section 5(g) of Act 279, Public Acts of Michigan, 1909, as amended.

ADDITIONAL INFORMATION concerning the proposed Bonds and the right of referendum with respect thereto can be obtained at the offices of the City Clerk or Finance Director upon request.

**DENNIS O. GREEN**
Finance Director
City of Detroit, Michigan

November 3, 1976

WILLIAMS and BLAIR MOODY, JR., JJ. *(dissenting)*. The difference between this opinion and the majority opinion is the amount of information the pertinent statute prescribes that a citizen is entitled to receive from a bond notice.

The amount of notice is prescribed in MCLA 117.5(g); MSA 5.2084(g) as follows:

"The notice of intent to issue bonds shall state the maximum amount of the bond issue, *purpose thereof,* source of payment, right of referendum thereon, and such other information as the legislative body shall determine to be necessary *to adequately inform the electors and all other interested persons of the nature of the issue* and their rights with respect thereto." (Emphasis added.)

The Mayor wrote the Common Council of Detroit on October 20, 1976, to describe the purpose of requesting funds for a project called in the city's application for leave to appeal a "new Riverfront Arena":

"I therefore propose the construction of a 20,000 seat arena, near Cobo Hall * * *

"the entire project will cost $20,000,000 * * * ."

This information advised the Common Council the funds requested were for

1) "construction"

2) a new arena, near Cobo Hall

3) "a 20,000 seat arena"

4) "the entire project will cost $20,000,000."

Two days later the City Finance Director requested the Common Council to approve a bond issue including "Civic Center—Riverfront Stadium Development $1,500,000".

The Common Council could make sense of this language because of the Mayor's prior communication.

The question before us, however, is whether such notice would "adequately inform the electors and all other interested persons of the nature of the issue * * * " and in particular, "the purpose thereof," as the statute requires. It is the majority's "opinion that defendant's notice of intent in the instant case met all the requirements of the statute * * * ."

It is our opinion that the additional information which was thought appropriate for the Common Council was also appropriate for the citizens of Detroit so they could adequately understand the "purpose" of the bond issuance.

"Civic Center—Riverfront Stadium Development $1,500,000" is at best ambiguous.

Does "development" mean architectural plans? Does it mean preparation of a preliminary proposal? Does it mean site preparation? Does it mean beautification? Does it mean minor construction?

Does "Riverfront Stadium" refer to the existing arena? Does it refer to a new arena? If to a new arena, does it refer to a 20,000-seat arena? A 100,000-seat arena? A $20,000,000 arena? A $200,000,000 arena?

Obviously, without extrinsic information, the reader of the notice cannot answer any of these questions. But the Legislature mandated that the notice itself should "adequately inform the electors and all other interested persons of the nature of the issue" and "state the * * * purpose thereof * * * ."

The record, viewed in its entirety, reflects the "purpose" of the bond issue was to cover architectural and engineering fees likely, coupled with initial site preparation expenses relating to the construction of a new 20,000-seat arena or stadium

near Cobo Hall at a cost originally estimated to be $20,000,000.

In our opinion the notice did not inform the "electors and all other interested persons" of this "purpose" as required by the statute, and consequently the notice is inadequate.[1]

What is involved in this case is a proposal to partially finance a public project. In order for citizens to have adequate knowledge of the purpose of this limited bond issuance, and make a fair judgment as to the exercise of their referendum right, the notice must generally describe the nature of the final project then planned. A bond issue which finances only a part of a project must be placed in context with the whole project in order to understand the "purpose" of the issuance, as required by the statute.[2] To interpret the statute otherwise would violate the Legislature's intent.

In passing, it is only fair to say that the failure to communicate here seems to have been the product of "bureaucratese", rather than any deliberate intent to deceive, for in almost all other respects the lessons of *Alan* appear to have been well learned and honestly and effectively applied. It is only hoped that, although this opinion is a minority opinion, its spirit will be as well applied in the future as the rest of *Alan* has in this case so that citizens whom the Legislature has sought to

---

[1] While it may be objected that it isn't practical to condense into the space of a notice the required information, that, of course, does not justify disregarding the statute. Furthermore, the necessary informative language would not have to be too cumbersome. For example, "Architectural, engineering and initial construction expenses for a new 20,000 seat Riverfront Arena to cost about $20,000,000—$1,500,000."

[2] The fact that the introduction in the notice states "for the purpose of paying all or part of the cost" does nothing to describe the purpose of the bond issue as far as what the money is being spent for.

inform, and whom we all serve, will be "adequately" informed in the future.

The trial court should be affirmed for the reasons herein.